DADE, J->
stated the Case and delivered the opinion, of the Court:
This is a question growing out of the petition of Joseph Santee, to be discharged from imprisonment upon a Writ *of Habeas Corpus, and adjourned to this Court by the Superior Court of Law for the county of Henrico. On the 18th July, 1822, an Examining Court for the Corporation of Petersburg.adjudged the prisoner to be sent on to the Superior Court for trial, upon a. charge of grand larceny. The stated Term of the Superior Court for that town, which should have occurred in the month of October following, was not held by reason of the sickness of the Judge assigned to that Circuit. At the ensuing Spring Term the-prisoner was indicted, and the case continued upon the motion of the Attorney for the Commonwealth. The illness of the Judge’s family in October, 1823, again prevented the holding of the regular Court in that month. So that three Terms have elapsed since the prisoner’s examination before the Justices, without his having had his trial, if the word *272 “ Term ” is taken in the restricted sense contended for by t;he prisoner’s Counsel, and for this cause he claims his discharge under the 28th section of the Act of Assembly regulating criminal - proceedings - against,-free1.; persons. (a) the decisión of this'case turns iipon the construction which shall be given to the word “ Term ” in the section fust referred to. If that word shall be considered to mean the stated time allotted for the holding of the Court, whether the Court shall have been held or not, then the prisoner ought to be discharged. If, on the contrary, it is to be regarded as designating the actual session of the Court, or in other words, if the words Term and Court are to be Considered as convertible, then he cannot be discharged. If the word Term had a fixed and definite meaning, in all cases whatsoever, this Court would probably never have had to decide this question. But, upon reference to the books, we can derive no satisfactory conclusion from them. An author, indeed, defines the Terms, as “ those spaces of time wherein Courts of Justices are open for all that complain of wrongs and injuries, and seek their rights by course of Law or Action, in order to their redress ; and during which, the Courts in Westminster Hall sit, and give judgments,” &c. (b) and this definition favors the construction which would make them synonimous with Courts. But it cannot be denied,'- thafin- common parlance 'in some of *the Statutes, and amongst the Law Writers, the word has been often indiscriminately used to express the actual session of the Court, and the stated time when it should sit. This gives room for construction, and imposes the necessity of enquiring into the reason of the Law, of considering the word in the context, and comparing the relative provisions of the section, so as to ascertain the sense,in which the word was used by the Legislature in this particular Law, and upon the result of this inquiry, the decision of this question turns.
And first as to the spirit of the Law : It seems to the Court, that whilst it has an eye to the solemn duty of protecting the public against the wrongs of those who are regardless of their obligations to society, and to the delays which the Commonwealth may unavoidably'encounter in prosecuting breaches of these obligations, it is studious''to shield the accused from the consequences of the laches of those to whom the duty of conducting the prosecution may have been assigned. The public has rights as well as the accused, and one of the first of these is, that of redressing, or punishing their wrongs. It would not seem reasonable that this right, so necessary to the preservation of society, should be forfeited without its default ;■ añ'd.distinct¡ indications of this are found in the first clause of this section, in which it is provided that the prisoner shall not be bailed at the first Term, upon his not being indicted, if it appear by affidavit that the witnesses against him cannot be procured in time ; that at the second Term, though not yet indicted, he shall not be discharged, if he himself hath prevented the attendance of the witnesses against him. And even although not tried at the third Term, he shall not be..discharged if the failure proceed'fro'm a' continuance on his own motion, or the inability of his jury to agree on their verdict. In all these cases, the Law, although tender of the liberty of the .citizen, prefers the rights of the Commonwealth. From which we infer, that it was never intended that these rights should be forfeited, without some degree of fault. And none can be imputed to a cause growing out of the Act of God, in bringing sickness or death on the officer who should have held the Court. But the context of the section, and giving their due weight to its several provisions, seem to. the Court to establish, that the word Term is here used as synoni-mous with .Court. If.the prisoner be not indicted at the first Term after his examination, *he is tobe bailed, unless the witnesses against him could not be produced in time. And here by the word Term, the actual sitting of the Court is clearly intended; because to entitle himself to this discharge on bail, the prisoner is to do an act, viz. petition for his trial on the first day of the Term, which it is impossible to do unless a Court be holden ; and in like manner the cause for which he may lose this privilege, ■the nohr.attendance of the- witnesses against him, necessarily supposes the actual Sittifrg of the Court. And here it might well be asked,-what good reason can be given, why the meaning which the word Term has in this .first clause, should be changed in the two following ? It would seem more proper to attribute consistency to the Legislature in its use throughout the section. In the second clause, it is declared that if the prisoner be not indicted at the second Term, he shall be discharged without bail, unless the attendance of the witnesses against him appear to have been prevented by himself. But how is it possible that this fact should be ascer- . tained if there be no Court ? or, indeed, where is the necessity' of' the provision in case no Court be held ? In the first clause we hold it clear that the word Term means Court, because an act is to be done by the prisoner, and may be counteracted by the Commonwealth, which necessarily supposes a Court. And in relation to the second Term, we in like manner see that the prisoner’s motion for his discharge, if. made in Court after the dismissal of the Grand Jury, without an Indictment having been found, may be repelled by proof that he prevented the attendance of the Commonwealth’s testimony; and so if. that fact were spread on the record, ■or proved -before-..the Judge, out of Court, upon a Habeas Corpus, it would' prévent his discharge. We think, therefore, that this provision in behalf of the Commonwealth, is equally indicative of an actual sitting of the Court being in the contemplation of the Legislature, as the like provision in the first clause. We will not repeat this course of reasoning with -respect'to the third clause, but will content ourselves with' remarking, *273 that the saving of the Commonwealth’s right to the longer detention of the prisoner, because he had himself obtained a continuance, or his jury could not agree, are precisely like the two. former as to their effect in proving the actual sitting of the Court to have been intended by the Legislature, as this saving is otherwise impossible.
*The reasons in support of the opinion that, in the first clause of the section under consideration, by the word Term, a Court is to be intended, (and from which it will be remembered, that the court insist the meaning should not be changed throughout the section,) are corroborated by reference to the 28th section of the Circuit Court Law. (c) That Law provides a Special Court to be held for the trial of one accused of a capital crime, imprisoned or bailed previously to a Stated Term, which from any cause was not held. Now, suppose one in jail, under the sentence of an Examining Court: the next regular Term, is from any cause not held. If the construction of the prisoner’s Counsel be correct, the prisoner is entitled to bail, and accordingly, immediately after the expiration of the time assigned for holding the Court, he applies to a Judge, who bails him to appear at the next Stated Term, and thus the Special Court is forestalled. But this argument may be exhibited in a still stronger aspect. Suppose a prisoner shall not have been tried for two Terms, and that at the third Term there shall be a failure to hold a Court. So soon as the cause is removed, the Judge orders a Special Session. But when the prisoner is brought before him, he pleads the lapse of the three prior Terms, without his having been tried, in bar of his further prosecution, and if the proposition of the prisoner’s Counsel be true, his .plea must be allowed ; and yet this vain and nugatory Special Court is expressly required by the 28th section, above referred to. These two Acts having been under the consideration of the Legislature at the same time, viz. at the Revision in 1819, ought to receive such construction as will make them consist, and not such as will induce the consequences just deduced. And this can only be done by giving to the word “ Term,” throughout the 28th section of the Act regulating Criminal proceedings against free persons, the meaning of “ Court.”
Lor these reasons, a majority of the Judges are of opinion, that the petitioner is not entitled to be discharged, and so the Court decides that he be remanded to the jail of the town of Petersburg : which is ordered to be certified to the Superior Court of Law for the county of Henrico.
*R. E. PARKER, J. Erom the opinion which has just been expressed in this Case, as that of the Court, I am compelled to dissent; and as it is an important one, I deem it proper briefly to express my reasons for such dissent, in which I am authorised to say Judges White, Allen, and Semple, concur with me.
Three periods of time, during which a Court might have been holden in the town of Peters-burg, have elapsed, and the prisoner has not been tried. It is not pretended that this failure has proceeded from any continuance granted on the motion of the, prisoner, nor from the inability of a jury at any former Court to agree on their verdict.. If those periods of time assigned by Law for the holding a Court, were Terms, then the prisoner comes strictly within the 28th section of the Act directing the, method of proceeding against free persons charged with, crimes, which is imperative, that “ if he be not .tried at or before the third Term after his examination before the Justices, he shall be forever discharged of the crime, unless such failure proceed from any continuance granted on the motion of the prisoner, or from the inability of the jury to agree on their verdict.” The underscored words were not in the former Law, but were added at the Revision of 1819, and being enumerated exceptions to the general provision, exclude all other causes of failure not enumerated, according to the maxim expressio unius est exclusio alterius : at least they exclude all others not proceeding from the prisoner himself.
To come at the sense of the Legislature, in the use of the word “ Term,” let us recur to the policy of the Law, and then examine the section more nearly, and compare it with other passag-es, where the same word is used. The object of the Legislature undoubtedly was to prevent the long imprisonment of persons charged with crimes, because such persons, not only in theory, but to many substantial purposes, are presumed innocent, until their guilt is legally ascertained by a public and impartial trial. To protract this trial, is to protract the punishment of persons regarded with impartiality, if not favour, by our Law, and to deprive them, as well as the Commonwealth, of all the advantages of a speedy enquiry into their alleged offences. The principle of a speedy trial to persons accused of crimes, had just been consecrated by our Bill of Rights, and it was natural that the Legislante, so soon as the war was over, ^should endeavour, by various provisions applying to the incipient and progressive stages of the prosecution, to transfer this principle into our Laws, and compel a speedy trial, or a discharge from confinement. This they attempted by several regulations in regard to the Examining Courts, and by the clause under consideration, except the last part of it, as early as the year 1786. As the clause then stood, it might be fairly argued, that the lapse of three Terms without a trial, entitled a prisoner to be forever discharged of his crime, although the failure to try him proceeded from some continuance granted on his own motion, or from the inability of the jury to agree on their verdict, and that this was the Legislative interpretation in 1819, is strongly to be inferred from the amendment then introduced. When the District Court system was adopted, this feature in the Criminal Law was carefully preserved with this important addition, .that the prisoner could not be tried without his consent, by *274 one Judge, and that if two did not attend the first Term, he was entitled to bail if not indicted ; at the second Term, to be discharged without bail, and if not tried the third Term, in consequence of the absence of one of the Judges, to be discharged forever from the crime. Now, here, the non-attendance of a Judge was expressly contemplated and provided for. It was to make no difference in the rights of the accused, although with his consent he might be tried by one ; and this, I contend, is a stronger case than the 'one at bar, where the prisoner could by no consent of his have been tried. Again, it is admitted, that at the present time, if the witnesses for the Commonwealth fail, or are unable to attend, the prisoner is beyond all question entitled to be discharged from imprisonment after the second Court, and from the crime after the third. Does not this shew, that the policy of this section was not merely to prevent oppression on the part of the prosecution, but also to provide agáinst tedious imprisonment previous to the establishment of guilt under any pretences ? For, if the first had been the principal object, the exceptions would have been more numerous, or the enacting clause less comprehensive. There is no greater laches on the part of the Commonwealth when the witnesses being duly summoned, do not attend, from sickness, or other causes, than when the Judge does not attend from the same causes. Why, then, will we say, from the supposed policy of the Law, that the non-attendance of the Judge was not in the '"contemplation of the Legislature, and provided for by this sweeping enactment; when the non-attendance of the witnesses, without fault in the prosecution, certainly was contemplated, and when the non-attendance of a Judge at the time it came specially under notice, was likewise considered, and was not to impair the prisoner’s right? When, also, the sickness of the Judge, immediately after the Term commences, will have such effect ? Or why, in order to avoid a supposed evil, shall we give an unusual, not to say a forced, meaning to a word frequently occurring in our Laws, and always in the same sense, when other similar evils will remain under a different construction of it, and when it will manifestly contravene the policy of the Legislature, which is, and I think ought to be, to prevent long imprisonments without trial, under all circumstances, unless occasioned by the prisoner himself, or caused by a division of his jury ?
I am not prepared to say, that more hardship and injustice may-not arise from keeping prisoners confined in jail, or even subject to prosecution, during all the period a Court may be prevented from sitting, than evil to the community from their discharge. Be that as it may, it is a question for the Legislature, not the Judiciary, who can only look to the policy of the Law; to the evil which existed, and to the remedy applied ; for the purpose of aiding in the construction of the words used by the former.
We come, now, to those words; and, here, it is important to observe, that the Law, in accordance with our Bill of Rights, was made for the benefit of the accused, and, therefore, each word in it ought to receive a liberal construction in his favour, and if of doubtful meaning, and fairly admitting two constructions, he is entitled to the choice.
The principal word on which this controversy hinges, is the word Term. Try it by its usual acceptation, and the sense annexed to it by the Legislature, in other sections of the Law. In common parlance, the Term of a Court means the period assigned by Law for the holding of a Court. Thus we speak familiarly of a Court’s not sitting at the last Term, or that the Judge could not attend at the Spring Term, or that the Court adjourned before the end of the Term, with other expressions denoting a clear distinction between Court and Term, which would be non sense if they were synonymous. And so, too, when the Legislature fixes the Terms of the Court, makes writs returnable *to some day of the Term, (without regard, I presume, to the sitting of the Court,) declares that if a Court shall not sit in any Term, or shall not continue to sit during the whole Term ; it is manifest the word is used to denote a period of time assigned by Law for the sitting of the Court, and not that Session itself.
Nor is this denied or doubted by the majority of the Court, but they argue, that in this particular instance, as appears by the context, the word is used in a different sense.
To support this position, the first part of the section is referred to, where, it is said, Court and Term are clearly correlatives ; and if they are so in the first clause, it is contended they continue so throughout. I, and the Judges who think with me, admit, that to entitle a prisoner to bail, if not indicted the first Term, it is necessary there should have been a Court long enough to enable the prisoner to make an application to be tried, because that is made a preliminary step: but we do not perceive how this determines the meaning of the word itself. There must be a Court, because something is directed to be done by the prisoner requiring a Court, but not because Court and Term, are synonymous. or used so in that passage. It was the pleasure of the Legislature that he should make an application to the Court at the first Term, or not be entitled, as of right, to bail. But, as the evil increases, as the time of his imprisonment is protracted, he acquires new and additional rights. Thus, if at the second Term he is not indicted, he is entitled to be discharged without bail. Here no application to a court' is required, and even the necessary non-attendance of the Commonwealth’s witnesses, .which would prevent his being bailed at the first Term, will not hinder his being discharged after the second. The witnesses must have been prevented from attending by himself, in order to produce that effect. If another Term elapses, and he is not tried, the Law so abhors long imprisonment, that he is not merely discharged from imprisonment, but of the crime itself. In the first two clauses the expressions are, “if he be not indicted ; ” but in the last, he must be tried as well as indicted. In the immediately preceding clause, the *275 non-attendance of the witnesses, caused by himself, may prevent his discharge; but even that qualification or restriction of his right, is not expressed in the last clause. Thus, we perceive, that as the Term of the prisoner’s confinement is *lengthened, he acquires additional rights, - and the restrictions on them are dropped one by one, until we come to the plain, broad, comprehensive declaration, that “if he be not tried at or before the third Term, after his examination, he shall be forever discharged of the crime,” with two exceptions only. This we take to be the meaning and spirit of the Law, to protect men possibly, nay, probably innocent, from grievous detention in Jail, of itself a sufficient punishment for most offences.
But how is the prisoner discharged ? Before it is operative, must there be a formal judgment of the Court ? We certainly think not. The Law discharges him, and if he is detained in custody for that cause only, his imprisonment is illegal, and he ought to be discharged by a Habeas Corpus.
Nor does the 28th section of the Act concerning the Superior Courts of Law, which has been relied on in argument, alter our opinion. That section authorises special Criminal Sessions in case any Term is not holden, and previously to such Term, (that is, the Term not holden,) any person shall have been imprisoned, or let to bail, charged with certain crimes. It was enacted long since the provision we have been considering ; and, therefore, ought not to have any effect upon its interpretation, when the question is only as to the sense in which the Legislature has made use of a word. But, independent of that consideration, the clause was certainly introduced for the benefit of persons charged with crimes, and was not intended to abridge their previously acquired rights. To prevent their long imprisonment, they are to be tried previous to the stated Terms, but not, if they are already entitled to be discharged. If all persons found in prison previous to the stated Term, are to be tried at the Special Sessions, what would be done with an individual clearly entitled to be discharged from the crime ? It may not be known to the Judge till he holds his Special Session, that these rights have accrued to the prisoner; but when he is made acquainted with, he is bound to respect, them. Moreover, we think that this very section affords the strongest argument in favor of our construction of the other Law, because it provides, that if the Judge do not attend the Special Session, the prisoner shall not thereby be discharged. Now, where was the necessity of this, unless it was the opinion of the Legislature that such non-attendance would, under the general Law, operate his discharge ?
. *That the clause in question has been commonly understood in the sense we give to it, we think, cannot be denied. Many instances have occurred, of the discharge of persons without requiring bail after the second Term, there having been no Court. Yet,, this objection has never, to our knowledge, been urged before. In this very Court, in the year 1817, a case occurred which involves, and which, we think, went a great way to settle, the question. This was the Case of The Commonwealth v. Lovett, ante, p. 74. In this Case, it appeared, the Court did not sit for two regular Terms. The Judge then appointed a special Session which also failed to meet. If this Special Session was to be accounted a Term, within the meaning of the Law, then it seemed to be admitted, on all hands, he was entitled to his discharge, because three Terms, notwithstanding the failure of the Court to meet, had passed. The General Court thought that the Special Session was no Term, within the meaning of the Law, for reasons it is unnecessary to repeat; and, therefore; that the prisoner was not entitled to his discharge. The other ground was either over-looked, which would go far to prove the general sense entertained of the effect of this clause at that time, or determined in favour of the prisoner: and it is hardly credible that it did not occur to the minds of the Judges, when in the very statement of the case, the fact was brought out in strong relief. "Whilst the Court below was doubting whether the Special Session came within the Law ; whilst this Court was debating, and even dividing upon that question, was it not natural to have cut up the controversy at once by remarking, that there had been no Term at all; and, therefore, that the prisoner was not entitled to his discharge ? The reason given for detailing him, would seem to exclude others, at least others that must have appeared on the record.
Upon the whole, we think, the prisoner is entitled to his writ of Habeas Corpus, and to his discharge from confinement. The judgment of the Court is, however, otherwise.
Sote (in edition of 1853.) — After this Case was argued by Henderson, for the petitioner, and the Attorney General for the Commonwealth, the Judges debated the question in conference, and the result was as stated above. It so happened, however, that after the decision in conference, one of the majority was prevented by indisposition from attending in Court during the remainder of the Session. Although, therefore, the above opinions were given in open Court, yet no entry was made in the Order Book of the Case. The decision was, however, considered as binding, for no other writ of Habeas Corpus was ever issued by any other Judge, and the prisoner was actually ai forwards tried on the Indictment.

 1 Rev. Code of 1819,-ch. 169, § 28, p. 607.

 Jacob’s Law Dictionary, title “Terms.”

 1 Rev. Code of 1819, ch. 69, p. 234.